UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYWANE C. STONUM,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF KERN, et al.,<br><br>    Defendants. | No. 1:16-cv-01076-DAD-JLT<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 15) |

This matter came before the court on February 7, 2017, for hearing of defendants' motion to dismiss pursuant to Federal Civil Procedure Rule 12(b)(6). (Doc. No. 15.) Plaintiff Dywane C. Stonum, proceeding pro se, appeared telephonically on his own behalf. Attorney James Brannen appeared telephonically on behalf of defendants County of Kern, Patricia Gable, Tracy Selph, James McClellan, Shannon Oastler, Debbie Spears, and Debra Davis. Following oral argument, the motion was taken under submission. For the reasons set forth below, the defendants' motion to dismiss will be granted in part and denied in part.

FACTUAL BACKGROUND

On July 26, 2016, plaintiff commenced this action against defendants, alleging employment discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. (Doc. No. 1.) In his complaint plaintiff alleges the following facts.

1

Plaintiff is a California resident who was employed with Kern County Department of Human Services ("KDHS") between April 2013 and January 2014. (*Id.* at 6, 17.) The individual defendants were also employed by KDHS during the relevant time frame.[1]

On April 1, 2013, plaintiff was hired by KDHS to fill the position of Human Services Technician I, charged with determining new and ongoing eligibility for California public assistance programs. (*Id.* at 6.) In May of 2013, plaintiff was placed at Kern County's Mojave office. (*Id.*)

During his employment at the Mojave office, plaintiff was exposed to a discriminatory work environment. Specifically, plaintiff observed "Obama-bashing"; the belittling of the Director of KDHS, a black woman; and co-workers celebrating after rejecting individual and family public assistance requests. (*Id.* at 11.) Plaintiff also observed defendants Gable and Selph, together with Melissa Calliston, operating as a management team that "target[ed] to eliminate anyone who disagree[d] with their unlawful acts of discrimination, and to discourage prospective applicants [for state public assistance]." (*Id.* at 12.)

On multiple occasions, defendants disputed plaintiff's handling of public assistance cases. In May 2013, plaintiff provided a customer with advice about how to avoid losing her public benefits, and Calliston reacted by reprimanding plaintiff and disparaging his character in front of coworkers. (*Id.* at 11–12.) Calliston ordered plaintiff to send the customer notice that she owed the county eleven years of over-payments; when plaintiff expressed concerns about this determination, Calliston admitted that the customer did not owe money to the county. (*Id.*)

At a later time, plaintiff identified an improper public assistance sanction being imposed on a customer, and instructed the customer regarding how to address the problem. (*Id.* at 14–15.) Defendants Gable and McClellan then met with plaintiff and reprimanded him, with defendant Gable telling plaintiff to be "very careful." (*Id.* at 15.)

---

[1] Defendant Gable is a Human Services Supervisor for the Mojave office and supervised both plaintiff and plaintiff's mentor, Melissa Calliston. (Doc. No. 1 at 10.) Defendant Selph was the Assistant Program Director for the Mojave office, and supervised defendant Gable. (*Id.* at 10.) Defendants Spears and Oastler were Assistant Program Directors from the Kern County Bakersfield office; defendant Davis was a Human Services Personnel Manager at the Mojave office; and defendant McClellan was a Social Service Supervisor at the Mojave office. (*Id.* at 9.)

1    Kern County State Investigation Unit ("SIU") officials also began to harass plaintiff.  (*Id.*
2    at 16.)  The SIU officials expressed dissatisfaction with the number of suspected fraud cases
3    plaintiff was reporting, and told him that he was falling short of the required fraud case quota.
4    (*Id.*)
5    Defendant Gable began instructing coworkers to send adverse letters to customers under
6    plaintiff's name, resulting in a series of complaints being made against plaintiff.  (*Id.* at 17.)
7    Defendant Gable also restricted plaintiff's ability to schedule walk-in appointments with
8    customers, causing him to miss a work deadline.  (*Id.*)  In response to the missed deadline,
9    defendant Gable wrote plaintiff a negative performance evaluation.  (*Id.*)
10   Meanwhile, plaintiff's white co-worker, Donald Burke, was treated more favorably and
11   given less scrutiny than plaintiff in the workplace.  In particular, Burke was given an earlier lunch
12   hour, was assigned a desk that was located closer to supervisors and managers, and was asked to
13   join a union by Calliston that plaintiff was never asked to join.  (*Id.* at 18.)
14   On July 25, 2013, plaintiff received a Memo of Concern from defendant Gable threatening
15   plaintiff with disciplinary action and termination.  (*Id.* at 13.)  Plaintiff was not provided any
16   additional information by defendant Gable, and was not given an August 2013 performance
17   evaluation report.  (*Id.*)  Plaintiff ultimately did not receive his employee performance report until
18   December 13, 2013.  (*Id.* at 16.)
19   On September 4, 2013, plaintiff made a complaint of racial discrimination to defendant
20   Davis.  (*Id.* at 13.)  Plaintiff also submitted a written request for an appointment with KDHS
21   Department Head Tony Lopez to discuss his employee performance report, but his request for
22   that appointment was denied without explanation.  (*Id.*)
23   In November 2013, plaintiff interviewed for the position of KDHS Social Services
24   Worker for which he had applied earlier that year.  (*Id.*)  The interview panel consisted of
25   defendants Selph, McClellan, and Oastler.  (*Id.*)  According to plaintiff was denied the position in
26   retaliation for his earlier complaint of racial discrimination.  (*Id.*)  By December 2013, plaintiff's
27   work started to be reassigned to his coworkers.  (*Id.* at 16.)
28   /////

1    On January 3, 2014, plaintiff was discharged by defendant Gable. (*Id.* at 17.) Plaintiff was not given his final pay after his discharge. (*Id.*)

Following his discharge, plaintiff filed a grievance with SEIU Local 521 and the Kern County Human Resources Department. (*Id.* at 18.) On April 2, 2014, plaintiff also filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 6, 18.) Plaintiff's grievance and complaint were found to be without merit. (*Id.* at 18.)

Plaintiff filed his complaint in this action on July 26, 2016. (Doc. No. 1.) On December 19, 2016, defendants filed the instant motion to dismiss the complaint. (Doc. No. 15.) Plaintiff filed his opposition and declaration in support thereof on January 9, 2017. (Doc. Nos. 19–20.) Defendants filed their reply on January 31, 2017. (Doc. No. 22.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim upon which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Novak v. United States*, 795 F.3d 1012, 1017 (9th Cir. 2015). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways

/////

4

that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not pled. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). The court also need not accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## ANALYSIS

Defendants move to dismiss plaintiff's complaint in its entirety, arguing that it fails to allege a cognizable claim of age or race discrimination under Title VII or the ADEA. (Doc. No. 15 at 7–13.) The court will analyze defendants' arguments with respect to each claim.

**I.     Title VII Claims**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e–2(a)(1). A person is discriminated against when he or she is singled out and treated lass favorably than others similarly situated on account of race. *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988).

Defendants argue in their motion to dismiss that plaintiff's Title VII claims do not meet federal pleading standards. While the allegations of the complaint do not clearly explain the type of Title VII claim plaintiff seeks to assert, the court interprets his complaint as presenting three separate claims, based upon: (i) hostile work environment, (ii) discrimination, and (iii) retaliation. Accordingly, the court will address the sufficiency of the complaint's allegations as to each of these causes of action.

5

**A. Discrimination**

It is well-settled that Title VII is concerned not only with intentional discrimination, but also with employment practices and policies that lead to disparities in the treatment of classes of workers. *See, e.g.*, *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31 (1971). Thus, a plaintiff alleging discrimination under Title VII may proceed under two theories: disparate treatment or disparate impact. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986–87 (1988).

Here, plaintiff does not clearly state in his complaint whether he seeks to assert a disparate impact or a disparate treatment claim. However, because plaintiff has clearly failed to allege facts which could support a claim of disparate impact, the court will assess whether his complaint alleges a cognizable discrimination claim based on disparate treatment.

"Under Title VII, an individual suffers disparate treatment when he or she is singled out and treated less favorably than others similarly situated on account of race." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (internal quotations omitted); *see also* 42 U.S.C. § 2000e-2(a)(1). To prove disparate treatment under Title VII, a plaintiff has the burden of alleging and demonstrating a discriminatory motive on the part of the defendant. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004); *see also Watson*, 487 U.S. at 988 (emphasizing that, while intent is irrelevant to a disparate impact claim, a disparate treatment claim requires proof of discriminatory intent).

A plaintiff may demonstrate intent by offering either "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." *Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007); *see generally Costa v. Desert Palace*, 299 F.3d 838, 852–53 (9th Cir. 2002) (noting that courts have taken different approaches as to the type and amount of evidence necessary to satisfy the standard of proof in Title VII discrimination cases, and stating that "jurisprudence [on this topic] has been a quagmire that defies characterization"). To prove discriminatory intent through direct evidence, a plaintiff must show the existence of evidence which, if believed, proves discriminatory motives without inference or

6

1  presumption. *See Costa*, 299 F.3d at 852; *see also Rollins v. TechSouth, Inc.*, 833 F.2d 1525,
2  1529 n.6 (11th Cir. 1987) (quoting *Black's Law Dictionary* 413 (5th ed. 1979). An example of
3  such direct evidence is an employer's use of a racial slur or epithet. *Lindsey v. SLT Los Angeles,*
4  *LLC*, 447 F.3d 1138, 1141 (9th Cir. 2006); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d
5  1018, 1029 n.7 (9th Cir. 2006). To prove discriminatory intent through circumstantial evidence, a
6  plaintiff must make a "specific" and "substantial" showing "that tends to show that the
7  employer's proffered motives were not the actual motives because they are inconsistent or
8  otherwise not believable." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998);
9  *see also Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) ("[T]he elements and
10 contours of a prima facie case will differ according to the facts at hand.").

11       One way a plaintiff can demonstrate discriminatory intent is by relying on the *McDonnell*
12 *Douglas* test. *See Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 691 (9th Cir. 2017)
13 (noting that "nothing compels the parties to use the *McDonnell Douglas* framework," and that
14 plaintiff may simply produce "evidence demonstrating that a discriminatory reason 'more likely
15 than not motivated' the employer") (citing *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir.
16 2007)); *see also Costa*, 299 F.3d at 852–53 (noting that a plaintiff may succeed in a
17 discriminatory treatment claim under Title VII by introducing "other sufficient evidence—direct
18 or circumstantial—of discriminatory intent."). Under the *McDonnell Douglas* test, a plaintiff can
19 establish a prima facie case of Title VII discrimination by pleading that "(1) the plaintiff belongs
20 to a protected class, (2) he was performing according to his employer's legitimate expectations,
21 (3) he suffered an adverse employment action, and (4) similarly situated employees were treated
22 more favorably, or other circumstances surrounding the adverse employment action give rise to
23 an inference of discrimination." *Reynaga*, 847 F.3d at 691; *see also McDonnell Douglas Corp. v.*
24 *Green*, 411 U.S. 792, 802 (1973); *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1105
25 (9th Cir. 2008).

26       Once plaintiff establishes a prima facie case of discrimination, the burden shifts to
27 defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment
28 action. *See McDonnell Douglas*, 411 U.S. at 802–803; *Diaz v. Eagle Produce Ltd. P'ship*, 521

F.3d 1201, 1207 (9th Cir. 2008). If defendants meet their burden in this regard, the burden shifts back to plaintiff to establish that defendants' proffered reason was a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Diaz*, 521 F.3d at 1207.

Defendants argue in their motion to dismiss that plaintiff has failed to adequately allege a cognizable claim of Title VII discrimination because he has not pled facts supporting the existence of direct or circumstantial evidence of discriminatory intent. (Doc. No. 15 at 8–13.) In his opposition, plaintiff argues that defendants' motion to dismiss is moot because this court has already concluded that the complaint stated a cognizable Title VII claim in its order granting plaintiff leave to proceed *in forma pauperis*. (Doc. No. 19 at 2.) Plaintiff also argues that, in any event, his Title VII claim is adequately pled. (*Id.* at 3–6.)

Plaintiff's first argument is completely unpersuasive. Clearly, "a defendant may challenge under Rule 12(b)(6) the claims of a plaintiff who has been granted in forma pauperis status even if the court has already reviewed those claims under 28 U.S.C. § 1915 and found them to be sufficient." *Wilson v. County of Contra Costa*, No. 14–cv–04726–JCS, 2015 WL 4880996, at *2 (N.D. Cal. Aug. 14, 2015); *see also Teahan v. Wilhelm*, 481 F. Supp. 1115, 1120 (S.D. Cal. 2007) ("[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."). Accordingly, defendants may move to dismiss plaintiff's complaint under Federal Civil Procedure Rule 12(b)(6), and their motion to dismiss has not been rendered moot by the court's granting of plaintiff's request to proceed *in forma pauperis*.

Turning to the merits of defendants' arguments with respect to plaintiff's Title VII claim, the court also finds them unpersuasive. Plaintiff has alleged in his complaint membership in a Title VII protected class, and performance according to the employer's legitimate expectations. (Doc. No. 15 at 9.) Plaintiff also has pled adverse employment action, alleging in the complaint that his work was reassigned to coworkers, he was denied a position as social worker, and he was ultimately terminated from employment. *See Fonseca v. Sysco Foods Servs. Of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) ("We define adverse employment action broadly . . . [as] exist[ing] where an employer's action negatively affects its employee's compensation."); *see also*

8

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (stating that an adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities.").

Finally, plaintiff has alleged facts supporting the existence of circumstantial evidence of discriminatory intent. In particular, plaintiff has described multiple instances of being singled out for disparate treatment because of his race. In his complaint plaintiff alleges that, during his time at the Mojave office, he was reprimanded without cause, with his competence and character criticized in front of coworkers and his work reassigned, (Doc. No.1 at 12); treated differently than his white coworkers by, amongst other things, not being invited to join a labor union, (*Id.* at 18); given unfair negative employment evaluations, (*Id.* at 17); and rejected for a social worker position at KDHS and ultimately terminated from his employment, (*Id.* at 13, 17). The court finds that these facts as alleged are sufficient to state a Title VII discriminatory treatment claim. *See Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) ("Proof of discriminatory motive . . . can in some situations be inferred from mere fact of differences in treatment."); *Hawn*, 615 F.3d at 1156 (noting that a plaintiff may show an inference of discrimination by "comparison to similarly situated individuals."); *see also Rivera v. East Bay Mun. Util. Dist.*, No: C 15-00380 SBA, 2016 WL 374180, at *1, 4 (N.D. Cal. Feb. 1, 2016) (finding that plaintiff stated a cognizable claim for Title VII gender discrimination when she alleged, amongst other things, that similarly situated male employees were provided with higher pay and transferred to a supervisor's union); *Gardner v. LKM Healthcare, LLC*, No. 3:10–cv–0686–LRH–VPC, 2011 WL 1044597, at *3 (D. Nev. Mar. 21, 2011) (finding that plaintiff adequately alleged discriminatory intent because she "allege[d] that similarly situated white employees were treated more favorably than black [employees]").

In their motion to dismiss, defendants contend that plaintiff has failed to state a cognizable Title VII claim because he did not plead all elements of the prima facie case described in *McDonnell Douglas*. However, a plaintiff asserting a Title VII discriminatory treatment claim is not required to allege all elements of the *McDonnell Douglas* test to satisfy federal pleading standards. *See Costa*, 299 F.3d at 854–55 ("[T]he precise requirements of a prima facie case [of

Title VII discriminatory treatment] can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic") (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)); *see also Reynaga*, 847 F.3d at 691 (noting that "nothing compels the parties to use the *McDonnell Douglas* framework," and that plaintiff may simply produce "evidence demonstrating that a discriminatory reason 'more likely than not motivated' the employer") (citing *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)). Rather, a plaintiff can state a cognizable claim for discriminatory treatment under Title VII by simply alleging the existence of "circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." *See also Hawn*, 615 F.3d at 1156. As explained above, plaintiff has provided sufficient factual allegations in his complaint to support such an inference.

Accordingly, taking all of plaintiff's allegations as true, as the court is obliged to do on a motion to dismiss, the court finds that plaintiff has stated a cognizable Title VII claim for discriminatory treatment. *See Iqbal*, 556 U.S. at 664. Defendants' motion to dismiss will therefore be denied as to this claim.[2]

**B. Retaliation**

Title VII also prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding." *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007). Under § 704 of the Civil Rights Act of 1964, it is unlawful:

> for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e–3 (2000). To make out a prima facie case of retaliation under Title VII, a plaintiff must allege facts demonstrating that "(1) [he] engaged in a protected activity, (2) [he] suffered an adverse employment action, and (3) there was a causal link between [his] activity and the employment decision." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065–66 (9th

---

[2] Of course, the court has no view as to whether plaintiff can ultimately come forward with sufficient evidence to prevail on his discriminatory treatment claim. Rather, the only question before the court is whether the facts as alleged are sufficient to state a claim.

1    Cir. 2003) (quoting *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1196–97
2    (9th Cir. 2003)); *see also Poland v. Chertoff*, 494 F.3d 1174, 1179–80 (9th Cir. 2007) ("To
3    establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected
4    activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link
5    between the plaintiff's protected activity and the adverse employment action.").

6          A plaintiff can satisfy the first element of a Title VII retaliation claim, participation in a
7    protected activity, by alleging that he filed a formal or informal complaint regarding unlawful
8    employment practices. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d
9    493, 506 (9th Cir. 2000); *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994). The disputed
10   employment practices need not have been actually unlawful; plaintiff need only show that his
11   belief that an unlawful employment practice occurred was "reasonable." *Id.* As to the second
12   element, for purposes of a retaliation claim, a challenged action must be "materially adverse,"
13   meaning that it would dissuade a reasonable worker from exercising protected rights. *See*
14   *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Ray v. Henderson*,
15   217 F.3d 1234, 1242–43 (9th Cir. 2000) (describing an adverse employment action as "any
16   adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the
17   charging party or others from engaging in protected activity"); *Xing Xing Lin v. Potter*, No. C 10–
18   03757 LB, 2011 WL 233053, at *11 (N.D. Cal. Jan. 22, 2011) (noting that the standard for
19   "materially adverse employment decision" in the retaliation context is even lower than that
20   required for a Title VII discrimination claim). Finally, a plaintiff may establish a causal link
21   between the protected activity and the adverse action by circumstantial evidence, including an
22   employer's knowledge of the protected activity or proximity in time between the protected action
23   and the adverse employment act. *See Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988); *see*
24   *also Passantino*, 212 F.3d at 507 ("[W]hen adverse decisions are taken within a reasonable period
25   of time after complaints of discrimination have been made, retaliatory intent may be inferred.").

26         In his complaint, plaintiff supports his retaliation claim under Title VII by alleging that he
27   was rejected for a position as a social worker and ultimately terminated from his employment
28   because he opposed unlawful employment practices at KDHS. (*Id.* at 12–17.) The court finds

that the allegations of plaintiff's complaint are sufficient to state a cognizable Title VII retaliation claim against defendants. For one, plaintiff has alleged that he engaged in a Title VII protected activity by making a complaint of racial discrimination to defendant Davis, his employer's Human Services Personnel Manager, on September 4, 2013, (Doc. No. 1 at 13). *See Passantino*, 212 F.3d at 506–07 ("[I]nformal complaints [to an employer] constitute a protected activity, such that actions taken against [plaintiff] after these initial complaints are appropriately the subject of [a] retaliation claim."); *see also Trent v. Valley Elec. Ass'n*, 41 F.3d 524, 526 (9th Cir. 1994) ("[W]hen an employee protests the actions of a supervisor such opposition is also protected activity."); *see also Small v. Feather River College*, No. 2:10–CV–3026–JAM–GGH, 2011 WL 1670236, at *6 (E.D. Cal. May 3, 2011) (finding that plaintiff adequately pled participation in a protected activity by alleging that plaintiff filed a charge of discrimination against defendant with human resources officials at his college); *see generally Xing Xing Lin*, 2011 WL 233053, at *11 (noting that the standard for "materially adverse employment decision" in the retaliation context is even lower than that required for a Title VII discrimination claim). Plaintiff also has pled adverse employment action, as discussed above. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Transfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions' [in the Title VII retaliation context]."). Finally, plaintiff appears to have alleged sufficient circumstantial evidence of a causal link between his complaints to human resources and the adverse employment actions, by asserting proximity in time—four months— between the protected action and the adverse employment decision. *See Passantino*, 212 F.3d at 507 ("[W]hen adverse decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred."); *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 870 n.14 (9th Cir. 1996) (finding a causal link between plaintiff's complaint and an adverse employment decision that occurred "within months afterward"); *see also Van Pelt v. Skolnik*, 897 F. Supp. 2d 1031, 1044 (D. Nev. Sept. 21, 2012) (finding a causal link between plaintiff's complaint and an adverse employment decision that occurred four months afterwards); *cf. McGinest*, 360 F.3d at 1124–25 ("Because the two events were separated by a year and a half, the timing alone does not establish

a connection."). *But see Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (finding that a four month gap between a discrimination complaint and an adverse employment action was insufficient to establish causality).

While defendants accurately argue in their motion to dismiss that plaintiff's complaint is short on details concerning his qualifications for the social worker position he was denied, or defendants' knowledge of plaintiff's prior discrimination complaints, federal pleading standards do not require such "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 570 (finding that plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face" to comply with the requirements of Federal Civil Procedure Rule 8). Additionally, while defendants dispute whether the adverse employment action experienced by plaintiff was in fact motivated the intent to discriminate (Doc. No. 15 at 10–11), such evidentiary disputes are not appropriate for resolution at this early stage of the litigation. *See Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1111 (9th Cir. 2003) ("A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.").

Accordingly, the court finds that plaintiff has adequately alleged a Title VII retaliation claim and defendants' motion to dismiss this claim will therefore be denied.[3]

**C. Hostile Work Environment**

Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To state a cognizable hostile work environment claim under Title VII, the plaintiff must allege facts showing that his work environment was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (citation omitted); *see also Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). To be actionable, the objectionable environment must be both objectively and subjectively offensive. *See Harris*, 510

---

[3] See fn. 2, above.

U.S. at 21–22; *see also Reynaga*, 847 F.3d at 687.  "Occasional or isolated incidents, unless especially severe, are insufficient" to support a Title VII claim." *Jackson v. Board of Equalization*, No. CIV S–09–1387 FCD DAD PS, 2010 WL 3733983, at *10 (E.D. Cal. Sept. 20, 2010); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000).

Here, plaintiff alleges that during his employment with KDHS, his white coworkers routinely made disparaging comments about President Obama and the KDHS Director, a black woman.  (Doc. No. 1.)  Plaintiff also alleges that coworkers regularly exchanged high-fives after rejecting individual and family public assistance requests.  (*Id.* at 11.)  However, in his complaint plaintiff does not allege that any of these incidents were motivated by racial bias.  *See Jackson*, 2010 WL 3733983, at *10 (dismissing plaintiff's Title VII claim based on an allegedly discriminatory work environment because "plaintiff has not alleged any facts suggesting that the incident was motivated by her race.").  Plaintiff also has not plead facts indicating that the alleged incidents reached the level of objective offensiveness sufficient to form the basis for a Title VII claim.  *See Oncale v. Sundown Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (observing that the Title VII requirement of objective severity guards against Title VII becoming a "general civility code.") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  There are no allegations, for instance, that defendants' conduct was physically threatening or personally humiliating, or that it affected his ability to perform his duties in the workplace.  *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1462–63 (9th Cir. 1994) (noting that a hostile work environment exists if the challenged conduct "pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position."); *Brooks*, 229 F.3d at 926 (rejecting a hostile work environment claim where plaintiff alleged that she was harassed on a single occasion for a matter of minutes in a way that did not impair her ability to perform her job in the long-term).

/////

//////

/////

/////

Accordingly, the court finds that the allegations of plaintiff's complaint are insufficient to state a Title VII hostile work environment claim upon which relief may be granted. Therefore, defendants' motion to dismiss this claim will be granted, with leave to amend.[4]

## II.     ADEA Claims

Defendants also argue that plaintiff's claim of discrimination under the ADEA fails under federal pleading standards. (Doc. No. 15 at 8–13.)

The ADEA makes it unlawful for an employer to discriminate against any employee "because of" that individual's age. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 167 (2009). "A plaintiff may show violations of [the ADEA] by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment." *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991), *superseded by statute on other grounds as recognized in Dominguez-Curry v. Nevada Transp. Dep't,* 424 F.3d 1027, 1041 (9th Cir. 2005); *see also Sablan v. A.B. Won Pat Intern. Airport Auth.*, No. 10-00013, 2010 WL 5148202, at *2 (Dec. 9, 2010) ("The ADEA tracks the language of Title VII and proscribes the same discriminatory conduct when the discrimination is based on the individual's age."). "The shifting burden of proof applied to a Title VII discrimination claim also applies to claims arising under ADEA." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420 (9th Cir. 1990); *see also Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012); *see generally Selby v. Pepsico, Inc.*, 784 F. Supp. 750, 754 n.3 (N.D. Cal. Oct. 16, 1991) ("[T]he standard for establishing a prima facie case will necessarily vary according to the facts and theories presented in each case.").

In their motion to dismiss, defendants do not contest that plaintiff is a member of a protected age group under the ADEA, or that he was terminated from his position as a Human Services Technician. (Doc. No. 15 at 9.) Instead, defendants argue that plaintiff has not alleged any direct or circumstantial evidence that defendants discriminated against him on the basis of

---

[4] A district court should provide leave to amend upon granting a motion to dismiss unless it is clear that the complaint could not be saved by any amendment. *Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). The court cannot conclude at this time that amendment here would be futile.

age. (*Id.* at 8–13.) Plaintiff argues in his opposition that he has sufficiently pled age discrimination in his complaint. (Doc. No. 19 at 10–13.)

The court finds plaintiff's arguments unpersuasive. Plaintiff has alleged precious few facts in his complaint in support of his age discrimination claim, specifically alleging only that he was terminated from his position as a Human Services Technician while a coworker "in his late 20's or early 30's" was not discharged. (Doc. No. 1 at 19.) This allegation is, by itself, insufficient to support an ADEA claim. *See Selby*, 784 F. Supp. at 755–56 ("The fact that plaintiff was discharged and younger employees were retained therefore does not in itself establish discriminatory intent sufficient to state a *prima facie* case."). Accordingly, defendants' motion to dismiss this claim will be granted with leave to amend also being granted.[5]

CONCLUSION

For the reasons set forth above:

1. Defendants' motion to dismiss plaintiff's Title VII discriminatory treatment claim is denied;
2. Defendants' motion to dismiss plaintiff's Title VII retaliation claim is denied;
3. Defendants' motion to dismiss plaintiff's Title VII hostile work environment claim is granted, with leave to amend;
4. Defendants' motion to dismiss plaintiff's ADEA age discrimination claim is granted, with leave to amend; and

/////
/////
/////
/////
/////
/////
/////

---

[5] See fn. 4, above.

5. Any amended complaint which plaintiff may elect to file in this action must be filed within twenty one (21) days of the date of this order.[6] Failure to file an amended complaint, or a notice of intent to proceed only on the claims which have survived this motion to dismiss, within the time provided will result in the dismissal of this action

IT IS SO ORDERED.

Dated:  **March 20, 2017**  
                                                                UNITED STATES DISTRICT JUDGE

---

[6] Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in any amended complaint plaintiff elects to file, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.